UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
J&J SPORTS PRODUCTIONS, INC., )
        Plaintiff, )
)
v. ) Civ. Act. No. 16-40177-TSH
)
)
MARCEL RODRIGUEZ, )
        Defendant. )
)

# DECISION ON MOTION FOR DEFAULT JUDGMENT (Docket No. 11)
**September 4, 2018**

**HILLMAN, D.J.,**

## Background

J&J Sports Productions, Inc. ("J&J Sports" or "Plaintiff") has filed suit against Marcel Rodriguez ("Rodriguez" or "Defendant") alleging that on November 22-23, 2014, Rodriguez's commercial establishment, DR Barbershop, unlawfully intercepted, received, published, divulged, displayed and/or exhibited *Manny Pacquiao v. Chris Algieri, WBO Welterweight Championship Fight Program* ("Program").[1] J&J Sports alleges claims against Rodriguez pursuant to several federal statutes, including the Communications Act of 1934, as amended, Title 47 U.S.C. § 605 ("§ 605"), *et seq.*(Count I), The Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553 ("§ 553"), *et seq.*(Count II), a state common law claim for conversion (Count III), and the Massachusetts Consumer Protection Act, Mass Gen.L.

---

[1] In addition to the Pacquiao/Algieri fight, the Program included various under-card bouts and fight commentary.

ch. 93A, §§ 2, 11("Chapter 93A") (Count IV). J&J Sports seeks statutory damages, actual damages and costs (including attorneys' fees). Additionally, J&J Sports alleges that Rodriguez acted willfully or knowingly and therefore, it is entitled to actual and enhanced damages.

Rodriguez was served on February 8, 2017, and was required to answer by March 1, 2017.[2] To date, Rodriguez has not filed an Answer or otherwise appeared in the case. On September 15, 2017, pursuant to Fed.R.Civ. P. 55 (a), J&J Sports filed a request for entry of default against Rodriguez. On April 18, 2018, that request was granted and the Defendant was defaulted. (Docket Nos. 6, 8 & 9). The Court entered its Standing Order on motions for default judgment that same date (Docket No. 10). The Standing Order provides that Plaintiff shall file a Motion for Entry of Default Judgment pursuant to Fed. R. Civ. P 55(b) within 30 days. On May 18, 2018, J&J Sports filed its Motion for Assessment of Damages and Entry of Default Judgment (Docket No. 11). For the reasons set forth below, the motion to enter default judgment is granted and J&J Sports shall recover $6,209.34 in damages, costs and fees.

## Facts

J&J Sports is a closed circuit distributor of sports and entertainment programming that was granted exclusive nationwide commercial distribution rights to the Program. J&J Sports entered into sublicensing agreements with various commercial entities throughout the United States by which it granted these entities the right to publicly exhibit the Program within their respective commercial establishments. Rodriguez's establishment, DR Barbershop, never lawfully licensed the Program from J&J Sports and unlawfully intercepted and exhibited the Program on November 22-23, 2014. More specifically, an investigator for J&J Sports entered

---

[2] A Worcester County Deputy Sherriff served a copy of the Summons and Complaint on Rodriguez by leaving a copy at his place of residence in Auburn, Massachusetts. Therefore, from the four corners of the Docket service appears to have been proper. *See* Docket No. 5.

DR Barbershop on November 23, 2014 at 12:34 a.m. and observed one (1) 32" flat screen television on which the main event was playing The same investigator counted the number patrons three separate times, and observed seven (7), eight (8), and seven (7), all of whom were watching the fight. The capacity of the establishment was not visible. Based on the investigator's observations and the pictures he provided, it appears DB Barbershop is a commercial establishment with a capacity to hold 1-100 peopled.  With that capacity, it would have cost Rodriguez $2,200 to obtain the proper license to show the Program.

## Discussion

### Entry of Default Judgment

The Court has reviewed Plaintiff's Complaint, which requests money damages and costs (including attorneys' fees). The Defendant, as a defaulting party, is "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." *Ortiz-Gonzalez v Fonovisa* 277 F.3d 59,62-63 (1st Cir. 2002) (quoting *Franco v. Selective Ins. Co.,* 184 F.3d 4, 9 n.3 (1st Cir. 1999). The Court has also reviewed Plaintiff's motion for entry of default judgment and supporting memorandum, as well as the accompanying affidavits. The Court is satisfied that the allegations are sufficient to support the entry of default judgment and more particularly, that Rodriguez is not an infant, incompetent or in  military service of the United States, and that he caused J&J Sports' damages and owes any costs incurred. The primary issue before the Court is how damages should be assessed against the defaulting Defendant. The Court must determine Defendant's liability for each claim and must then assess damages by considering the type and amount of damages to be awarded, including whether enhanced damages, attorneys' fees and costs are appropriate.

Plaintiff's Claim for Statutory Damages under 47 U.S.C. §§ 553 and 603

Plaintiff asserts a claim under the Communications Act of 1934, as amended, Title 47 U.S.C. § 605 *et seq.*, The Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553 *et seq.* Sections 605 and 553 are similar, however, §605 provides for mandatory recovery of costs' and attorneys' fees while under § 553, recovery of such damages is discretionary. J&J Sports acknowledges that First Circuit's ruling in *Charter Communications Entertainment I v. Burdulis,* 460 F3d 168, 173 (1st Cir. 2006) suggests that §605 does not encompass Defendant's alleged wrongful conduct *i.e.,* interception of the transmission of the Program, because the conduct does not amount to authorized receipt of radio communications. J&J Sports argues, however, that the conduct in this case is more analogous to the conduct in *PPV Connection, Inv. v. Rodriguez,* 607 F.Supp.2d 301 (D.Puerto Rico 2009), in which the district court in Puerto Rico found that a licensed distributor of pay-per-view programming can be transmitted over satellite or radio.

Circuit Courts are split as to the applicability of § 605 and § 553 to allegations involving theft of cable services.[3] Section 553 provides, in relevant part, that "no person shall intercept or receive or assist in intercepting or receiving any communications services offered over a cable system, unless specifically authorized to do so by cable operator…" 47 U.S.C. § 553 (a)(1). Section 605, on the other hand, provides that "[n]o person receiving… any interstate or foreign communications by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof…" 47 U.S.C. § 605(a). Some courts have interpreted Section 553 as applying where a commercial establishment intercepts a cable signal and §605 as

---

[3] At the same time, it is clear that a plaintiff cannot recover under both statutes for a single violation. *See J&J Sports Productions, Inc. v Mendoza-Govan,* 2011 WL 1544886, at 7 (N.D.Cal. Apr. 25, 2011); *Joe Hand Promotions, Inc. v. Willis,* No. 5:08CV276, 2009 WL 369511 (N.D. Oh. Feb. 11, 2009)

applying where a commercial establishment intercepts a satellite broadcast. *See J&J Sports Productions Inc., v. Mosley,* No.-C-10-5126 CW (EMC), 2011 WL 2066713 (N.D. Cal. Apr. 31, 2011) and cases cited therein; *see also J&J Sports Productions Inc., v. Chacko,* Civ.Act. No. 1:13-CV-1977-CC, 2013 WL 6190603 (N.D. GA. Nov. 25, 2013) (noting that Third and Seventh Circuits have taken position that § 553 covers interception of cable programming transmitted over cable network and § 605 covers cable transmissions as they travel through the air *i.e.,* satellite transmissions). Other courts have interpreted the act of intercepting cable and/or satellite signals as violating both § 553 and § 605. *See International Cablevision, Inc. v. Sykes,* 75 F.3d. 123, 133 (2d. Cir. 1996); *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.,* 920 F.Supp.2d.659 (E.D. Va. 2013). The prevailing view in this District, based on the First Circuit's decision in *Burdulis*, is that § 553 applies to theft of cable services while §605 applies to theft of satellite services. This is the view which I find persuasive.

J&J Sports has alleged a violation of both §§ 553 and 605. This Court is able to determine that Rodriguez's establishment intercepted a cable broadcast from the affidavit submitted by the investigator; "…a silver cable box was located by the counter in the back area to the left side" (Docket No. 13). Moreover, while a satellite dish can be seen on the roof of the store adjacent to DR Barbershop, the investigator does not mention seeing equipment consistent with use of a satellite signal. Therefore, on this record, the Court will assume that Rodriguez violated § 553 by intercepting a cable program over a cable network.

*Assessment of Damages Under § 553*

Section 553 provides for assessment of damages as follows:

> [d]amages awarded by any court under this section shall be computed in accordance with either of the following clauses: (i) the party aggrieved may recover actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing actual

> damages…; or (ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

47 U.S.C. § 553(3)(A). Additionally, where the violations were "committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000." *Id.,* § 553(c)(3)(B).

Based on the records before me, I find that Rodriguez is liable for a single violation of § 553. That is, the facts are sufficient to establish that he or his agents intercepted and displayed a transmission of the Program at his commercial establishment, DR Barbershop when he was not entitled to do so in violation of 47 U.S.C. § 553. The maximum statutory damages which J&J Sports would be entitled to recover is $10,000. In this case, there were no more than about eight (8) individuals in the establishment while the Program was being broadcast. The investigator only mentions the Program was displayed on a single television screen. The investigator mentions that there was no cover charge to enter the establishment. Under these circumstances, I am awarding J&J Sports its actual damages, that is, the $2,200 to which it would have been entitled had Rodriguez paid it the appropriate sublicensing fee.

J&J Sports also seeks enhanced damages on the grounds that Rodriguez's violation was willful and for the purpose of commercial advantage or private financial gain. Based on the record before me, I find that J&J Sports has established that Rodriguez's interception of the cable signal was necessarily intentional and that it was done for purpose of commercial advantage or private gain, that is, it was done to induce patrons into the establishment. This is first time that Rodriguez has engaged in this type of conduct at his commercial establishment. Therefore, I am awarding J&J Sports an additional $2,200 in enhanced damages.

*Attorneys' Fees; Costs of Suit*

Pursuant to § 553(c)(2)(C), the Court has discretion to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." J&J Sports has established that it has incurred $1,375.00 in attorneys' fees. Based on the affidavit of J&J Sports' counsel, Patricia Szumowski, I find the hours expended (five) to be reasonable for this matter and the rate charged ($275 per hour) to be comparable to that charged by attorneys with like experience in the geographic area. Therefore, J&J Sports is awarded the full amount of attorneys' fees requested. In addition, costs are awarded against Rodriguez in the amount of $433.34 expended by J&J Sports for filing and service costs. *See Affidavit of Patricia Szumowski* (Docket No. 14).

Plaintiff's Conversion Claim

J&J Sports has also asserted a state law claim for conversion. Some courts have held that a state law conversion claim is barred on preemption grounds under the Federal Communications Act and/or the Copyright Act. *See Id.* It is not necessary for me to determine what the First Circuit would hold on this issue, because the damages awarded to J&J Sports under § 553 are sufficient to compensate it for its loss and therefore, as with the Chapter 93A claim, any award of damages for conversion would be duplicative.

Plaintiff's Chapter 93A Claim

I agree with those courts in this District that have found that for purpose of Chapter 93A, it is unfair business practice for a commercial establishment to intercept a cable signal and exhibit a sports program. *See Joe Hand Promotions, Inc. v. Patton,* Civ.Act. No. 10-40242- FDS, 2011 WL 6002475 (D.Mass. Nov. 29, 2011) and case cited therein. However, an award of enhanced damages and attorneys' fees under Chapter 93A would be duplicative. *Id.*

## Conclusion

The Motion For Default (Docket No.11) is **_granted._** The Clerk shall enter the Default Judgment in favor of J&J Sports Productions, Inc. as follows:

1. Compensatory damages in the amount of $2,200,

2. Damages for willful violation in the amount of $2,200,

3. Attorneys' fees in the amount of $1,375, and

4. Costs in the amount of $434.34

The Clerk is directed to enter judgment for J&J Sports Productions, Inc. in the total of $6,209.34, with the prejudgment interest provided by law on damages awards.


/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**